# In the United States Court of Federal Claims

No. 24-357
Filed: July 22, 2024†

| | |
|---|---|
| **RBVETCO, LLC,** | |
| *Plaintiff,* | |
| v. | |
| **THE UNITED STATES,** | |
| *Defendant,* | |
| and | |
| **PERFORMANCEEPC – GREENLAND, JV, LLC,** | |
| *Intervenor-Defendant.* | |

*D. Matthew Jameson III,* Burns White LLC, Pittsburgh, PA, for Plaintiff.

*William P. Rayel*, Senior Trial Counsel, with *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, *Douglas K. Mickle*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., with *Angela M. Diorio*, Of Counsel, Office of General Counsel, Department of Veterans Affairs, and *Christopher J. McClintock*, Of Counsel, Office of Litigation, Small Business Administration, for Defendant.

*Anthony H. Anikeef*, Williams Mullen, P.C., Tysons, VA, for Intervenor-Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

    This bid protest considers whether the United States Department of Veterans Affairs ("VA") erred when it reaffirmed an award to PerformanceEPC, LLC – Greenland, JV, LLC

---

† This Order was originally filed under seal on July 15, 2024. (ECF No. 54). The Court provided parties the opportunity to review this Opinion for any proprietary, confidential, or other protected information and submit proposed redactions. The parties did not propose any redactions. (ECF No. 57). Thus, the sealed and public versions of this Opinion differ only to the extent of the publication date and this footnote.

("PGJV")—a joint venture between PerformanceEPC ("PEPC"), the protégé, and Greenland Enterprises, Inc. ("Greenland"), the mentor. The VA reaffirmed this Service-Disabled Veteran-Owned Small Business ("SDVOSB") set-aside contract for the renovation of a boiler plant. Disappointed offeror, RBVETCO, LLC, who does business as Rocky Bleier Construction Group ("RBCG"), challenges the United States on two main grounds. First, RBCG argues that the VA misevaluated PGJV's past performance and experience under 13 C.F.R. § 125.8(e) by exclusively relying on mentor Greenland's experience. Second, RBCG argues that the VA failed to consider whether protégé PEPC could perform at least forty percent of the joint venture's work as required by 13 C.F.R. § 125.8(c).

The Court determines that the VA reasonably reviewed proposals and properly determined its award decision based on a best value tradeoff. Accordingly, the Court denies RBCG's Motion for Judgment on the Administrative Record, (Pl.'s MJAR, ECF No. 30), and grants the United States' and PGJV's Cross-Motions for Judgment on the Administrative Record, (Def.'s xMJAR, ECF No. 32; Int.-Def.'s xMJAR, ECF No. 34).

## I. Background

The procurement involves an SDVOSB set-aside firm fixed-price contract to renovate a boiler plant at the Lebanon, Pennsylvania VA Medical Center.[1] (Administrative Record ("AR ___") at 606, ECF No. 24). The Solicitation[2] estimated the price to range from $10 to 20 million. (*Id.*). The Solicitation also stated the VA would make an award based on a best-value tradeoff. (AR 613). It explained that the VA would evaluate the value of proposals based on three factors: Technical, Past Performance, and Price. (AR 619). The Solicitation stated that Technical and Past Performance would hold equal weight, and when combined "are significantly more important than Price." (*Id.*). When rating the factors, the VA awarded strengths, weaknesses, and deficiencies to each proposal. (AR 3822). Notably, a proposal received a deficiency for "[a] material failure of a proposal to meet requirements or a combination of significant weaknesses in a proposal that increases the risk of unsuccessful contract performance to an unacceptable level." (*Id.*).

Factor 1—Technical—consisted of four subfactors: Experience, Personnel and Organization, Work Methods, and Schedule. (AR 616–17). Each Technical subfactor would hold equal weight and be assigned an adjectival rating ranging from Unacceptable to Outstanding. (AR 560–62). The VA would also assign an overall Technical rating. (AR 562, 620). Relevant here, a Good rating applied when "[t]echnical proposal meets requirements and indicates a thorough approach and understanding of the requirements. Strengths outweigh any weaknesses. Risk of unsuccessful performance is low[;]" an Acceptable rating applied when "[t]echnical proposal meets requirements and indicates an adequate approach and understanding of the requirements. Strengths and weaknesses are offsetting or will have little or no impact on contract

---

[1] This is the second iteration of the Solicitation. (*See* AR 4185–94). The VA initially awarded the contract to PEPC, but RBCG filed a bid protest at the Government Accountability Office ("GAO"), prompting the VA to take corrective action and cancel that first contract. (*See id.*).

[2] Solicitation No. 36C24423R0002.

performance. Risk of unsuccessful performance is moderate;" and a Marginal rating applied when the "[t]echnical proposal does not meet all requirements and has not demonstrated an adequate approach and understanding of the requirements. Weaknesses outweigh any strengths. Risk of unsuccessful performance is high. Proposal is not awardable without discussions." (AR 562).

Subfactor 1, Experience, evaluated whether the proposed team—defined as the Prime and/or First Tier subcontractor—had experience managing construction projects like the proposed boiler renovation in size, complexity, and type. (AR 616, 620). To determine the proposed team's experience, offerors were required to provide "up to five projects" performed in the last five years for evaluation. (AR 616).[3] Each project would be "individually evaluated for relevancy" and "shall contribute to the overall Experience rating." (AR 620). The Solicitation further specified that "[s]ignificant consideration" would be given when team members served in the same role as they would fulfill in the contract. (*Id.*).

Subfactor 2, Personnel and Organization, evaluated whether the proposed team "are capable of performing the work detailed in the [Statement of Work ("SOW")]." (*Id.*). The Solicitation provided it would assess "each firm's overall organization as well as individual qualification to performance the work." (*Id.*). An offeror would be "rated more favorably" if able to demonstrate that their staff successfully worked with proposed subcontractors. (*Id.*). Subfactor 3, Work Methods, evaluated whether an offeror's work methods, including "proportion of in-housework, travel distance, safety, and quality control," demonstrated it could perform the contract. (*Id.*). Subfactor 4, Schedule, evaluated whether an offeror generated a schedule and if that proposed schedule demonstrated an ability to successfully perform. (*Id.*).

Factor 2—Past Performance—evaluated the currency and relevancy, including size and scope, of the offeror's past projects to determine if it could successfully perform the contract's requirements. (AR 620–21). The Solicitation specified it would give "[s]ignificant consideration" to prior projects within fifty miles of Lebanon, PA. (AR 620). It further provided that the VA may use "data independently obtained from other Government or commercial sources, including, but not limited to Government databases; personal business experience with the offeror; and information provided in the Offeror's Past Performance Relevancy Questionnaire []; Subcontractor Information []; Past Performance Evaluation Questionnaires [], completed by the offeror's references." (AR 621). The Solicitation also notified offerors that it may look at predecessor companies or key personnel who have relevant experience that were proposed to perform major or critical aspects of the requirements. (*Id.*). The VA assigned a Confidence rating ranging from Neutral (when no current and/or relevant performance record was proposed) to Substantial. (AR 565). Factor 3—Price—was evaluated by Total Evaluated Price ("TEP") evaluated the "reasonableness of the proposed price in relation to the [S]olicitation requirements." (AR 622).

In response to the Solicitation, three SDVOSB-verified firms, including PGJV and RBCG, submitted proposals. (AR 4516). The VA evaluated each offeror's proposal on the

---

[3] That was later amended to projects within the last seven years. (AR 1973).

3

factors and subfactors detailed above. (AR 3824–43, 3915, 4521–46).[4] For Subfactor 1, PGJV received six strengths, three weaknesses, and no deficiencies, whereas RBCG received two strengths, four weaknesses, and no deficiencies. (AR 4525–26, 4533–34). For Subfactor 2, the VA awarded PGJV three strengths, three weaknesses, and no deficiencies, and RBCG three strengths, four weaknesses, and no deficiencies. (AR 4526–28, 4534–35). For Subfactor 3, PGJV received five strengths, two weaknesses, and no deficiencies, and RBCG received two strengths, no weaknesses, but two deficiencies. (AR 4528–29, 4535). For Subfactor 4, the VA awarded PGJV five strengths and no weaknesses or deficiencies, and RBCG one strength, three weaknesses, and one deficiency. (AR 4529, 4536). Under Factor 2—Past Performance—the VA determined that for PGJV, four out of five past projects were Very Relevant and the fifth was Relevant. (AR 4530–32). For RBCG, the VA determined that one past project was Relevant but four of five were Not Relevant. (AR 4536–37).[5]

The VA's relevant evaluations are summarized in the following chart:

| Offeror | Technical Ratings | Past Performance Ratings | Offeror Pricing |
|---|---|---|---|
| PGJV | Subfactor One: Acceptable<br>Subfactor Two: Acceptable<br>Subfactor Three: Acceptable<br>Subfactor Four: Good<br>Overall: Acceptable | Relevant Satisfactory Confidence | $14,688,149 |

---

[4] On March 21, 2024, the United States moved for an enlargement of time because the VA considered taking corrective action. (Def.'s Mot., ECF No. 13). Ultimately, the VA issued a new source selection decision that determined PGJV "remains the best value and reaffirmed the award to PGJV." (Def.'s Apr. 22, 2024 Status Report, ECF No. 22; AR 4521–48). Because the VA reevaluated each proposal and assigned new ratings, (*see* AR 4521–46), the Court provides those updated ratings.

[5] The Court notes that the VA only reevaluated relevant portions PGJV's proposal. (Def.'s Notice of Corrective Action at 1 (specifying that intends to "[r]e-evaluate the proposal of the awardee, [PGJV], with respect to Factor 1 (Technical) and Factor 2 (Past Performance);" and "[c]omplete a new Source Selection Evaluation Board Report (SSEB)[.]"), ECF No. 17; *compare* AR 3827–29 *with* AR 4525–29). Under Factor 1—Technical, the VA initially awarded PGJV a Good rating consisting of three strengths and no weaknesses or deficiencies for Subfactor 1; one strength and no weaknesses or deficiencies for Subfactor 2; four strengths, one weakness, and no deficiencies for Subfactor 3; and four strengths and no weaknesses or deficiencies for Subfactor 4. (AR 3827–29). Notably, and perhaps conveniently, whenever the VA added a weakness to PGJV's Technical Subfactors, the VA invariably also added at least one strength for that Subfactor. (*Id.*). In total, the VA added seven strengths and seven weaknesses for Factor 1—Technical. (*Id.*). Similarly, under Factor 2—Past Performance, the VA initially awarded PGJV a Very Relevant Satisfactory Confidence and found that all five past projects were Very Relevant. (AR 3921–22). During the corrective action, the VA downgraded PGJV's Past Performance rating to Relevant Satisfactory Confidence and determined one of PGJV's past projects warranted a Relevant rating. (AR 4529–32 (four other projects remained Very Relevant)).

4

| RBCG | Subfactor One: Acceptable<br>Subfactor Two: Marginal<br>Subfactor Three: Acceptable<br>Subfactor Four: Marginal<br>Overall: Marginal | Relevant Limited Confidence | $14,693,866 |

(AR 4525–26).

Following evaluation, the VA determined that PGJV's proposal, which was also the lowest price, offered the best overall value and formally awarded the contract to PGJV in November 2023. (*See* AR 3939–40, 4000, 4056–57). After the VA notified failed offerors, RBCG filed an unsuccessful size protest with the Small Business Administration ("SBA"). (AR 4112–20, 4412–30, 4144–51).[6] RBCG filed its Complaint with this Court on March 6, 2024. (Compl., ECF No. 1). As explained above, the VA took corrective action and reaffirmed its award to PGJV. (AR 4521–48; Def.'s Apr. 19, 2024 Status Report & Resp., ECF No. 22). The parties filed cross-motions for judgment on the administrative record. This matter is now fully briefed and ripe for a decision on the merits.

## II. Analysis

When the Court hears a bid protest, it "appl[ies] the appropriate [Administrative Procedure Act ("APA")] standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985). Under the APA, "the inquiry is whether the agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and, if so, whether the error is prejudicial." *Glenn Def. Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 907 (Fed. Cir. 2013). Therefore, the Court must determine whether "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1358 (Fed. Cir. 2009).

To determine whether the agency's action was arbitrary or capricious, the Court must determine whether the action was "legally permissible, reasonable, and supported by the facts[,]" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); it may not substitute its own judgment for that of the agency. *UnitedHealth Mil. & Veterans Servs., LLC v. United States*, 132 Fed. Cl. 529, 551 (2017). Importantly, "[i]f the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." *Weeks Marine, Inc.*, 575 F.3d at 1371 (quoting *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989)). "Procurement officials have substantial discretion to determine which proposal represents the best value for the government" particularly in the "minutiae of the procurement process[.]" *Id.* at 1368; *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996). However, if the agency's action fails under the APA standard,

---

[6] RBCG's appeal of that dismissal is currently pending before the SBA's Office of Hearings and Appeals ("OHA"). (AR 4200–01; *see* Def.'s xMJAR at 11–12).

5

the Court must determine if the "bid protester was prejudiced by that conduct." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005). To establish prejudice, the plaintiff must show "that there was a 'substantial chance' it would have received the contract award but for the [agency's] errors." *Id.* at 1353.

Where parties move for judgment on the administrative record, RCFC 52.1 provides a procedure to seek the equivalent of an expedited trial on a "paper record, allowing fact-finding by the trial court." *Id.* at 1356. The Court can resolve questions of fact by referencing the administrative record because genuine issues of material fact do not preclude judgment on the administrative record. *Id.* at 1355–56. Further, the Court "will not put words in an agency's mouth or invent supporting rationales the agency has not itself articulated" because it is bound to the administrative record. *ENGlobal Gov't Servs., Inc. v. United States*, 159 Fed. Cl. 744, 764 (2022) (quoting *IAP Worldwide Servs. v. United States*, 159 Fed. Cl. 265, 286 (2022)). Therefore, the Court is wary of "any rationale that departs from the rationale provided at the time the procuring agency made its decision." *Sys. Stud. & Simulation, Inc. v. United States*, 152 Fed. Cl. 20, 32 (2020) (quoting *Raytheon Co. v. United States*, 121 Fed. Cl. 135, 158 (2015), *aff'd* 809 F.3d 590 (Fed. Cir. 2015)).

RBCG challenges the VA's evaluation and award decision as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. First, RBCG argues that the VA violated 13 C.F.R. § 125.8(e) because as the small business protégé, PEPC, lacked requisite experience and past performance. (Pl.'s MJAR at 21–28). Second, RBCG argues the VA violated 13 C.F.R. § 125.8(c) when it determined that PEPC demonstrated that it could perform at least forty percent of the joint venture's work. (*Id.* at 28–33). Finally, RBCG argues it was prejudiced by the VA's errors. (*Id.* at 33–34). The United States and PGJV disagree with each claim, (Def.'s xMJAR at 23–39; Int.-Def.'s xMJAR at 3–5); the Court agrees with the United States and PGJV.

> A. *The VA's evaluation appropriately considered PEPC's past performance and experience under Subfactor 1 and Factor 2 .*

RBCG argues that the VA improperly evaluated PEPC's lack of past performance and experience in violation of 13 C.F.R. § 125.8(e). (Pl.'s MJAR at 21–28). Specifically, RBCG contends that section 125.8(e) requires the small business protégé—here PEPC—to have some experience in the type of work to be performed under the contract. (*Id.* at 21). RBCG argues that section 125.8(e)'s purpose is to avoid abuse of the SBA's mentor-protégé program by requiring the small business protégé to "meaningfully contribute[] to the joint venture." (*Id.* at 21–26). RBCG concludes that by relying solely on Greenland's past performance and experience, the VA violated the language and purpose of section 125.8(e). (*Id.* at 26–28).

The United States argues that RBCG fails to meet its burden of proof that the VA violated section 125.8(e). (Def.'s xMJAR at 23–30). The United States continues that section 125.8(e) only requires the agency to "consider" each joint venturer's past work, it does not "*mandate* a specific degree of consideration." (*Id.* at 24 (quoting *Ekagra Partners, LLC*, B-408685.18, 2019 CPD ¶ 83, at *6 (Comp. Gen. Feb. 15, 2019) (emphasis added by United States))). The United States continues that the VA properly exercised its discretion to determine

that PEPC's limited experience warranted an Acceptable rating.[7] (*Id.* at 25–27). The United States concludes that, although PEPC lacks sufficient experience and capabilities to compete for the contract on its own, it satisfies the purpose of the mentor-protégé program. (*Id.* at 28–30). For its part, PGJV agrees with the United States. (Int.-Def.'s xMJAR at 3–5 ("Having reviewed the Administrative Record, the agency's rationale for its initial and subsequent award decisions to PGJV, and the protest grounds asserted by RBCG, PGJV does not believe that it possesses independent knowledge or grounds to provide to the Court separate from those its [*sic*] expects will be advanced by the United States in support of the VA's award decision.")). The Court agrees with the United States and PGJV.

As an initial matter, this contract is a "set-aside 100%" for SDVOSB intended to "fulfill the VA's mission to meet socioeconomic goals." (AR 536, 540). Typically, a large business cannot qualify for an SDVOSB set-aside contract, but an exception exists if it is participating in the SBA's mentor-protégé program. *Def. Integrated Sols., LLC v. United States*, 165 Fed. Cl. 352, 359 (2023) (explaining "[a] joint venture may qualify for an SDVOSB procurement provided, amongst other things, that '[a]t least one party to the joint venture is a[n] [SDVOSB] concern.'" (quoting FAR 19.1403(c)(2))). Here, PEPC serves as the SDVOSB and protégé, and Greenland serves as the mentor; together they formed the SDVOSB joint venture, PGJV. (*See* AR 3536). Section 125.8 provides requirements that a joint venture—like PGJV—must satisfy to submit an offer for a small business set-aside. 13 C.F.R. § 125.8. Section 125.8(e) specifically addresses capabilities, past performance, and experience, and mandates how a procuring agency evaluates a joint venture. *Id.* at 125.8(e). Fundamentally, the parties disagree over the meaning of section 125.8(e).

Section 125.8(e) governs joint ventures, like PGJV, participating in a small business set-aside. 13 C.F.R. § 125.8(e). Section 125.8(e) states:

> When evaluating the capabilities, past performance, experience, business systems and certifications of an entity submitting an offer for a contract set aside or reserved for small business as a joint venture established pursuant to this section, a procuring activity must *consider* work done and qualifications held individually by each partner to the joint venture as well as any work done by the joint venture itself previously. A procuring activity may not require the protégé firm to individually meet the same evaluation or responsibility criteria as that required of other offerors generally. The partners to the joint venture *in the aggregate* must demonstrate the past performance, experience, business systems and certifications necessary to perform the contract.

*Id.* (emphasis added).

When interpreting regulations, the Court applies the same interpretive rules used when analyzing the language of a statute. *Boeing Co. v. Sec'y of Air Force*, 983 F.3d 1321, 1327 (Fed.

---

[7] Prior to the corrective action, the VA gave PGJV's Technical proposal a Good rating. (AR 3915–16).

Cir. 2020) (citing *Mass. Mut. Life Ins. Co. v. United States*, 782 F.3d 1354, 1365 (Fed. Cir. 2015)). Therefore, the Court must analyze the plain and ordinary meaning of section 125.8(e). *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute."). Importantly, the Court must assess "a [regulatory] scheme in its entirety" and "give full effect to all words contained within [a] statute or regulation, thereby rendering superfluous as little of the statutory or regulatory language as possible." *Hanser v. McDonough*, 56 F.4th 967, 970 (Fed. Cir. 2022) (internal quotations omitted). "If the regulatory language is clear and unambiguous, the inquiry ends with the plain meaning." *Goodman v. Shulkin*, 870 F.3d 1383, 1386 (Fed. Cir. 2017).

The Court recently analyzed the plain language of section 125.8(e) in *HEALTHREV, LLC v. United States*, No. 24-0352, 2024 WL 3042407 (Fed. Cl. June 13, 2024) (Lerner, J.). There, Judge Lerner determined that the dictionary definition of "in the aggregate" means "considered as a whole." *Id.* at *5 (citing *In the aggregate*, Merriam-Webster Dictionary, https://www.merriamwebster.com/dictionary/in%20the%20aggregate (last visited May 7, 2024)). Judge Lerner continued that "[r]eading the last sentence of [section] 125.8(e) in context, the agency must evaluate the qualifications of the mentor, protégé, and the [joint venture] to determine whether, as a whole, the joint venture can successfully perform the contract[,]" and the agency may "allow the mentor partner's strengths to offset the protégé's limitations." *Id.* In other words, the mentor's qualifications may counterbalance the protégé's lack of experience. *See id.* When applied to section 125.8(e)'s requirements, "as long as the protégé's weaknesses are assessed in tandem with its mentor partner's and the joint venture's overall strengths," the agency may exercise its discretion and consider it as a factor. *Id.* (finding that "consider" means "to think about carefully" and "to take into account." (citing *Consider*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/consider (last visited May 10, 2024))). Although the Court is not bound by the decisions of other judges, such rulings may be persuasive. *E.g., Doe v. United States*, 95 Fed. Cl. 546, 572 (2010). Here, the Court is persuaded by Judge Lerner's analysis in *HEALTHREV, LLC* and adopts her interpretation of section 125.8(e).

The Court agrees with the United States that the VA sufficiently "considered" PEPC's lack of experience and past performance to satisfy section 125.8(e). (*See* Def.'s xMJAR at 23–27). The VA documented that PEPC "did not demonstrate any relevant projects" and considered it a weakness under Subfactor 1. (AR 4526; *see also* July 3, 2024 Oral Argument Transcript ("OA Tr.") 29:17–24 (United States: "[The agency] recognized that [PEPC] hadn't performed any relevant contracts itself here, and it assigned a weakness for that under the experience factor, and, in fact, once the agency took into -- specifically took into consideration [PEPC's] – [PEPC's] experience, it lowered the evaluation from good to acceptable."), ECF No. 51). The VA also documented strengths that showed Greenland's experience offset PEPC's lack of experience. Specifically, the VA noted Greenland completed one relevant and four very relevant projects, demonstrated "that they can manage projects well" because of experience with differing subcontractors, and previously worked with three intended subcontractors (AR 4525–26); *see HEALTHREV, LLC*, 2024 WL 3042407, at *5 (agency may "allow mentor partner's strengths to offset the protégé's limitations").

However, the VA did not exclusively evaluate Greenland's experience; instead, the VA provided that *both partners*—Greenland and PEPC—demonstrated "familiarity with Cleaver-

Brooks boilers and the type of boiler systems specified for this project" as well as experience at the Lebanon VA Medical Center utility plant and its existing infrastructure. (AR 4526). This finding contravenes RBCG's argument that the VA's evaluation violated the purpose of the SBA's mentor-protégé program. (*See* Pl.'s MJAR at 23–24). It is undisputed that in 2020 the SBA provided that "SBA's rules require a small business protégé to have *some experience* in the type of work to be performed under the contract." 85 Fed. Reg. 66146, 66167 (emphasis added). Here, the VA noted that PEPC had some experience, albeit not relevant experience, in the type of work to be performed. (*See* AR 4526; July 3, 2024 OA Tr. 27:9–13 (United States: "We're not saying that that's a 'relevant project' or even somewhat relevant project, but it is experience in this -- in this area, in this line of work, and, you know -- and that's the main thing here.")). This finding also invalidates RBCG's argument that as the protégé, PEPC failed to contribute to the joint venture beyond its SDVOSB status. (*See* Pl.'s MJAR at 23, 26–27 (quoting 85 Fed. Reg. 66146, 66167–68 ("The protégé must, however, bring something to the table other than its size or socio-economic status."))). Because the VA documented PEPC's experiences and noted them under Subfactor 1's strengths and weaknesses, the VA provided "a coherent and reasonable explanation of its exercise of discretion." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009).

Further, in bid protests "the deference afforded to an agency's decision must be even greater when a trial court is asked to review a technical evaluation." *Harmonia Holdings Grp., LLC v. United States*, 152 Fed. Cl. 97, 106–07 (2021) (quoting *CSC Gov't Sols. LLC v. United States*, 129 Fed. Cl. 416, 434 (2016)). As noted above, the Court "should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." *Weeks Marine, Inc.*, 575 F.3d at 1371. The Court declines to adopt RBCG's argument which would necessarily negate the VA's discretion over technical evaluation of PGJV and its joint venturers. (*See* July 3, 2024 OA Tr. 18:11–20 (RBCG: "I also think there's a real inconsistency when you look at the evaluation, because on one hand the Government says, well, [PEPC]-- yeah, they don't really have any experience on this size and scope, but that's okay because of Greenland. Yet when they look at my client's proposal, they penalize them for lack of boiler plant experience, even though my client has worked on many, many multimillion-dollar projects managing subcontractors.")). The Court therefore will not second-guess the VA's technical evaluation and assignments of strengths and weaknesses to PGJV's proposal under Subfactor 1.

Similarly, the VA documented PEPC's past performance and acknowledged that the five prior projects submitted by PGJV were performed by Greenland. (AR 4529–32 ("all five of the projects provided in exhibit A were performed by [Greenland] (mentor of the JV partnership).")). However, the VA also provided that "[w]hile [PEPC] did not demonstrate past performance on projects similar to the type anticipated for this project, they have demonstrated knowledge of our boiler systems and infrastructure and have established a good rapport with our boiler plant operators." (AR 4530). PEPC's knowledge of the Lebanon VA Medical Center's boiler plant was listed as a consideration when the VA awarded PGJV a Satisfactory Confidence rating. (AR 4532–33). Therefore, the VA again "considered" PEPC's past performance "to determine whether, as a whole, the joint venture can successfully perform the contract[,]" *HEALTHREV, LLC*, 2024 WL 3042407 at *5. Accordingly, the VA did not violate section 125.8(e) requirements and reasonably evaluated PGJV's aggregate experience and past performance.

9

### B. The VA's evaluation of PGJV's proposal did not violate 13 C.F.R. § 125.8(c).

RBCG argues that the VA violated 13 C.F.R. § 125.8(c) when it concluded that PEPC sufficiently demonstrated that as the protégé it could perform at least forty percent of the joint venture's work and more than administrative or ministerial functions. (Pl.'s MJAR at 28–33). Specifically, RBCG argues section 125.8(c) ensures that the small business protégé meaningfully contributes to performance and receives business assistance—as intended by the SBA's mentor-protégé program. (*Id.* at 28–30).[8] RBCG further asserts that PGJV's proposal failed to demonstrate that PEPC has the capabilities to perform at least forty percent of the work. (*Id.* at 30–33). RBCG highlights that although PGJV identified forty employees who would perform the contract, it failed to specify whether those employees worked for PEPC or Greenland. (*Id.* at 31). RBCG also argues that PGJV used only "a vague description" to explain the relationship between PEPC and Greenland, raising questions about PEPC's individual capabilities. (*Id.* at 31–33).

For its part, the United States argues that RBCG has not demonstrated that the VA violated section 125.8(c). (Def.'s xMJAR at 30–36). Specifically, the United States contends that section 125.8(c) governs contract performance and does not impose proposal evaluation requirements on the VA. (*Id.* at 30). The United States further argues that because PGJV certified that it meets the technical requirements of the Solicitation and its proposal did not have "significant countervailing evidence" that it could not perform, the VA rationally found no concerns regarding performance. (*Id.* at 32–33 (citing *Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1330 (Fed. Cir. 2011))). The United States continues that RBCG erroneously argued that the VA should have "scrutinized" PGJV's proposal further to question how the mentor, PEPC, would perform at least forty percent of the contract. (*Id.* at 35–36). Again, PGJV agrees with the United States, (Int.-Def.'s xMJAR at 3–5); as does the Court.

As stated above, when faced with questions of regulatory interpretation, the Court begins with the plain language of the regulation. *Jimenez*, 555 U.S. at 118; *Boeing Co.*, 983 F.3d at 1327. Critically, section 125.8(c) is titled "Performance of work" and contains no mandatory language about the procurement process. 13 C.F.R. § 125.8(c). Rather, it repeatedly uses phrases like "must perform," "work performed," and "work done," all of which indicate performance, not pre-award evaluations. *Id.*; (*see* Def.'s xMJAR at 31 (emphasizing performance phrases in section 125.8(c))). This is in stark contrast to section 125.8(e) that explicitly imposes requirements on the procuring agency. *Compare* 13 C.F.R. § 125.8(c)(1) ("the joint venture must perform . . . ") *with id.* at § 125.8(e) ("a procuring activity must consider perform . . . "). The plain language of section 125.8(c) shows it governs contract performance, not the agency's pre-award evaluation.

Further, the VA rationally identified no significant countervailing evidence that PGJV lacked the capacity to comply with section 125.8(c) during performance. The Federal Circuit held that so long as "an offeror has certified that it meets the technical requirements of a proposal," the Contracting Officer ("CO") may rely on that certification when "determining

---

[8] The Court previously addressed the purpose of the SBA's mentor-protégé program and whether PGJV's proposal was responsive to that purpose. Thus, the Court declines to address it further.

whether to accept a bid, and the offeror's potential failure to comply with the proposal requirements is ordinarily 'a matter of contract administration,' which does not go to the propriety of accepting the bid." *Allied Tech. Grp., Inc.*, 649 F.3d at 1330 (citation omitted). However, if there is "significant countervailing evidence reasonably known to the agency evaluators" they should question whether "the offeror will or can comply with the requirement." *Id.* at 1331 (citation omitted). Here, no such significant countervailing evidence was identified.

RBCG first attempts to identify such evidence by arguing that PGJV did not show how Mr. Joseph Shepard—PEPC's Project Manager—could perform under the contract. (Pl.'s MJAR at 30 ("([Mr. Shepard] lives and works in Ohio) having no experience on the work to be performed under the contract."); *see also* AR 3450). However, this mischaracterizes PGJV's proposal and Mr. Shepard's experience. (Pl.'s MJAR at 30; *see also* AR 3450). As the United States argues, Mr. Shepard has experience "[m]anag[ing] the construction and startup of a $2MM boiler plant system for several [F]ortune 500 clients" and oversaw "construction management, budgeting, scheduling, safety, scope development, and contract administration." (Def.'s xMJAR at 15, 28 (quoting AR 3450)). Further, the Court is not in the practice of second-guessing an offeror's ability to perform based on an employee's home state. *See Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (COs are "entitled to exercise discretion upon a broad range of issues confronting them[.]"); *see also Weeks Marine, Inc.*, 575 F.3d at 1368, 1371 (giving COs "substantial discretion" in the "minutiae of the procurement process[.]"). Therefore, Mr. Shepard's prior experience does not constitute significant countervailing evidence of PGJV's likely noncompliance and inability to perform at least forty percent of the contract. *Allied Tech. Grp., Inc.*, 649 F.3d at 1331; *see e.g., IAP Worldwide Servs., Inc.*, 159 Fed. Cl. at 296 (noting that offeror provided information required by the Solicitation for the requirement).

Similarly, PGJV's failure to specify which company the forty identified employees work for in its proposal is also not "significant countervailing evidence." *Allied Tech. Grp., Inc.*, 649 F.3d at 1331. The Solicitation itself did not require offerors to identify the employment relationship for each employee, but to explain how they would satisfy performance. (*See* AR 1944–45 (informing offerors to "[e]xplain in detail how you will perform the minimum percentage required [] with your own resources.")). PGJV provided information on the total amount of work to be performed under the contract and how much would be self-performed by PGJV as the joint venture. (AR 3524). Again, the Court may not substitute its own judgment for that of the agency so long as the Court identifies a reasonable basis for the agency's action. *UnitedHealth Mil. & Veterans Servs., LLC*, 132 Fed. Cl. at 551; *Weeks Marine, Inc.*, 575 F.3d at 1371. Accordingly, the VA's evaluation of PGJV's proposal did not violate the plain language of 13 C.F.R. § 125.8(c).

### C. RBCG failed to demonstrate it was prejudiced by the VA's errors.

RBCG argues it was prejudiced by the VA's errors. (Pl.'s MJAR at 33–34). RBCG asserts the VA acted contrary to law and because the Solicitation provided "discussions could have been conducted with the companies that submitted proposals," those discussions "would have permitted the award to RBCG." (*Id.* at 34; July 3, 2024 OA Tr. 18:9–11 (RBCG: "Well, I do think clearly my client could have been awarded this project with discussions even under the current evaluation[.]")). However, RBCG advances no evidence to support this conclusory

statement, highlight the strengths of its own proposal, or demonstrate the VA would have proceeded to discussions. (*See* Pl.'s MJAR at 33–34). It is well-settled that as the plaintiff, RBCG bears the burden of proof in this bid protest. *Impresa Construzioni Geom. Domenico Garufi*, 238 F.3d at 1333 ("the disappointed bidder bears a heavy burden[.]"). Here, RBCG fails to bear that heavy burden and demonstrate it was prejudiced by the VA's alleged errors. (*See* Pl.'s MJAR at 33–34). Accordingly, the VA's source selection decision was rational, well-documented, and in accordance with the law.

### D. RBCG failed to satisfy the requirements for injunctive relief.

Notably, RBCG fails to demonstrate or seek any specified relief in its present motion. (*See* Pl.'s MJAR at 34). Rather, RBCG simply asks the Court to "grant its Motion for Judgment on the Administrative Record under RCFC 52.1 and enter judgment in its favor." (*Id.*). In its Complaint, RBCG asked the Court to "set aside" the award to PGJV and order the VA to re-evaluate proposals in compliance with 13 C.F.R. § 125.8(c). (Compl. at 15). To the extent that this constitutes a request for injunctive relief, RBCG fails to demonstrate it is entitled to that relief. (*See generally* Pl.'s MJAR).

For the Court to grant injunctive relief, the plaintiff must succeed on the merits of the case. *PGBA, LLC v. United States*, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004) (explaining that to issue a permanent injunction, the court must consider whether (1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief.). RBCG fails on the merits and did not sufficiently address prejudice. The Court is unable to award injunctive relief and need not analyze the remaining factors for injunctive relief, though it again notes that RBCG fails to address the last three factors in this present motion. (*See generally* Pl.'s MJAR); *Int'l Res. Recovery, Inc. v. United States*, 64 Fed. Cl. 150, 164 (2005) ("A plaintiff that cannot show that it will actually succeed on the merits of its claim cannot prevail on its motion for injunctive relief.").

### III. Miscellaneous Filings

Throughout this litigation, the parties filed several motions regarding the record before the Court. On July 3, 2024, the Court verbally ruled on the pending motions, (July 3, 2024 OA Tr.); this Order memorializes those rulings in turn.

First, on April 22, 2024, RBCG moved to supplement the AR to include the 2021 solicitation for the boiler plant renovation project, referred to as the "First Solicitation." (Pl.'s Mot. to Suppl., ECF No. 27). RBCG argues the First Solicitation was necessary for "effective judicial review" and to "avoid the unfairness that would result if RBCG were hamstrung in pretending as if this procurement began in January 2023 with the Second Solicitation." (*Id.* at 5–7). The United States disagrees, arguing that RBCG failed to show the current AR was incomplete or that it was proper for the Court to consider a two-year old, canceled solicitation. (Def.'s Resp. to Mot. to Suppl. at 17–33, ECF No. 28). The Court agrees with the United States.

As stated above, in a bid protest, the Court "appl[ies] the appropriate [Administrative Procedure Act ("APA")] standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Fla. Power & Light Co.*, 470 U.S. at 743–44. Importantly, that record constitutes materials before the agency at the time of the decision. *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1380 ("The purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the 'arbitrary and capricious' standard into effectively de novo review.'") (quoting *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005))). Supplementation of the record should only occur when "the omission of extra-record evidence precludes effective judicial review." *Id.* Effective judicial review is satisfied "if it is consistent with the APA." *AgustaWestland N. Am., Inc. v. United States*, 880 F.3d 1326, 1331 (Fed. Cir. 2018) ("The focus of judicial review of agency action remains the administrative record, which should be supplemented only if the existing record is insufficient to permit meaningful review consistent with the APA.") (quoting *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1380).

RBCG argues that because the First and Second Solicitations are for the same project, they do not constitute different procurements. (Pl.'s Mot. to Suppl. at 4). However, this fundamentally misunderstands the procurement process. The Court routinely holds that when a solicitation is canceled and a new solicitation is ordered, all actions relating to that first solicitation are moot. *E.g., Galen Med. Assocs., Inc. v. United States*, 369 F. 3d 1324, 1335 (Fed. Cir. 2004) ("We agree with the Court of Federal Claims that such alleged violations were rendered moot by the order of a new solicitation by the [agency]."). Fundamentally, RBCG requests that the Court consider the record from a *prior*, canceled procurement. (Pl.'s Mot. to Suppl. at 4). This is improper as information from the First Solicitation was not before the agency at the time of its award decision. (*See* Def.'s Resp. to Mot. to Suppl. at 21 ("After cancelling the award to [PEPC], the VA did not re-open the First Solicitation to award a new contract under that solicitation.")).

Further, RCFC App. C ¶ 22(u) provides the "core documents relevant to a protest case may include, as appropriate . . . the record of any previous administrative or judicial proceedings relating to the procurement, including the record of any other protest of *the* procurement." (Emphasis added). Here, *the* procurement is the Second Solicitation and subsequent award to PGJV; it is untethered from the First Solicitation. (*See* Pl.'s Mot. to Suppl. at 4 (repeating misunderstanding that same underlying project means "they do not involve separate or different procurements.")). The Court examined the existing record—consisting of the Second Solicitation—and determined that the agency provided a coherent and reasonable explanation of its exercise of discretion in the procurement process. Accordingly, the Court conducted an effective judicial review based on the existing AR.

Second, on May 31, 2024, the United States moved to strike two exhibits, references to those exhibits, and two webpages from RBCG's MJAR. (Def.'s Mot. to Strike, ECF No. 33). The United States argues that RBCG violated a protective order from the SBA's Office of Hearings and Appeals ("OHA") when it attached two agreements between PEPC and Greenland which are also outside the AR, and improperly discussed two webpages that are outside the AR. (*Id.* at 3–7). For its part, RBCG did not oppose the United States's Motion to Strike regarding the exhibits. (Pl.'s Resp. at 4–5, ECF No. 42). RBCG acknowledges that the exhibits and references to those exhibits in its MJAR failed to comply with the OHA's order. (*Id.*).

13

However, regarding the webpages, RBCG requests that the Court supplement the record to include them to "permit effective judicial review of RBCG's claims." (*Id.* at 6). Specifically, RBCG contends that the webpages demonstrate PEPC overstated its relevant experience and supports its argument that the VA violated 13 C.F.R. § 125.8(c). (*Id.* at 6–8). As explained above, supplementation of the record is only appropriate when "omission of extra-record evidence precludes effective judicial review." *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1380. Here, RBCG attempts to shoehorn in evidence that PEPC lacked the capacity to perform by relying on a webpage displaying information already available to the VA in PGJV's proposal. (*See* Pl.'s Resp. at 6–8; *see also* AR 3444, 3450, 3454–56, 4525–33). Accordingly, the Court performed an effective judicial review based on the existing AR, without any reference to the webpages.

Third, on June 5, 2024, the United States moved to correct the AR, (Def.'s Mot. to Amend/Correct, ECF No. 37), because ten pages of the AR—AR 1940–50—became corrupted while the AR was finalized. The motion is unopposed. The Court hereby incorporates the uncorrupted pages, (ECF No. 37-1), into the AR.

Finally, on June 14, 2024, RBCG moved for leave to file an amended MJAR and to strike its original filing. (Pl.'s First Mot. for Leave, ECF No. 43).[9] Specifically, RBCG proposes to remove the two attachments and redact the language relating to those documents (at the request of the United States and PGJV to maintain pagination). (*Id.* at 5–6) Notably, RBCG does not address the United States' argument that it relied on extra-record evidence—the two websites—to advance an argument. (*See generally* Pl.'s First Mot. for Leave). The motion for leave to file an Amended MJAR and strike its original filing is granted.

### IV. Conclusion

Accordingly, the Court **DENIES** RBCG's Motion for Judgment on the Administrative Record, (ECF No. 30), and **GRANTS** the United States' and PGJV's Cross-Motions for Judgment on the Administrative Record, (ECF Nos. 32, 34).

The parties shall meet and confer and file a joint status report proposing redactions to this memorandum opinion by **July 29, 2024**, to allow the Court to file a public version of the opinion.

Further, the Court **DENIES** RBCG's Motion to Supplement, (ECF No. 27). The Court **GRANTS** the United States' Motion to Strike, (ECF No. 33), **GRANTS** RBCG's Motions for Leave to File an Amended MJAR and Strike Original Filing, (ECF Nos. 43, 52), and **ORDERS** RBCG to file an amended Motion for Judgment on the Administrative Record redacting any reference to the extra-record exhibits and webpages. The Court also **GRANTS** the United States' Motion to Amend/Correct, (ECF No. 37).

---

[9] On July 8, 2024, RBCG again moved for leave to file an amended MJAR and to strike the original filing. (Pl.'s Second Mot. for Leave, ECF No. 52). RBCG reiterated its acknowledgement that its original filing violated the OHA's protective order and should be stricken from the record; RBCG again did not discuss the webpages. (*Id.* at 5–6).

The Clerk is **DIRECTED** to enter judgment for Defendants. Each party shall bear their own costs.

**IT IS SO ORDERED.**



s/ David A. Tapp
DAVID A. TAPP, Judge